IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FRANCISCO JAVIER ARGUETA MONTES,    )
        )
       Petitioner,    )
        )
    v.    )    1:26-cv-926 (LMB/WBP)
        )
MARKWAYNE MULLIN, et al.,    )
        )
       Respondents.    )

## ORDER

Petitioner Francisco Javier Argueta Montes ("Montes"), a native and citizen of El Salvador, has filed a five-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since March 23, 2026. Specifically, Montes alleges that ICE's revocation of the order releasing him from custody pending removal and ICE's attempt to remove him to Mexico without adhering to the proper procedures violated DHS's regulations and his due process rights (Counts III, IV, and V). He also alleges that his prolonged detention violates Zadvydas v. Davis, 533 U.S. 678 (2001), and 8 U.S.C. § 1231(a)(6) (Counts I and II).

Montes is currently detained at the Caroline Detention Facility, which is within this Court's jurisdiction and the basis upon which he is suing Paul Perry, the warden of the Caroline Detention Facility. Montes has also sued Markwayne Mullin, the DHS Secretary; Todd Lyons, the Acting Director of ICE; Todd Blanche, the Acting Attorney General; and Robert Guadian, the Director of the ICE Washington Field Office (collectively, "the federal respondents").[1] For

---

[1] Acting Attorney General Todd Blanche has automatically replaced his predecessor under

the reasons discussed in this Order, the Court finds that Montes has been detained in violation of DHS's regulations and his due process rights. The Court also finds that DHS may not remove Montes to Mexico unless an Immigration Judge first reviews the negative determination regarding whether Montes has a reasonable fear of persecution or torture if removed to Mexico. Accordingly, the Petition will be granted as to Counts III, IV, and V, and the federal respondents will be ordered to release Montes from custody immediately.

## I.

The following facts are undisputed. Montes was born in 2000 in El Salvador. [Dkt. No. 1] at ¶ 34. He entered the United States as an unaccompanied minor, was encountered by border patrol officers in Texas on April 13, 2013, and was released by the Office of Refugee Resettlement on May 29, 2013. [Dkt. No. 4-2] at ¶ 6. On April 14, 2013, Montes was issued a Notice to Appear that charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Id. ¶ 7; [Dkt. No. 1-2]. Several years later, on January 10, 2017, he filed an Application for Asylum and for Withholding of Removal. [Dkt. No. 4-2] at ¶ 9. That same day, an Immigration Judge administratively closed Montes's removal proceedings. Id.

On December 9, 2020, Montes was sentenced in a Texas federal court to 72 months of imprisonment for (1) interference with commerce by robbery and (2) using, carrying, and brandishing a firearm during and in relation to, and possessing and brandishing a firearm in furtherance of, a crime of violence. Id. ¶ 10. On March 22, 2022, ICE was notified that Montes was due to be released from prison on August 12, 2023.[2] [Dkt. No. 10-1] at ¶ 11. Accordingly,

---

Federal Rule of Civil Procedure 25(d).

[2] According to the federal respondents, two factors make it "reasonably conceivable" that Montes's scheduled release date would have been on or around August 12, 2023. [Dkt. No. 10] at 2. First, Montes appears to have received a 29-month credit toward his sentence because he

2

ICE issued an immigration detainer, and on August 11, 2023, Montes was "transferred from federal criminal custody to civil immigration custody." Id. ¶¶ 12–13.

Subsequently, an Immigration Judge re-calendared Montes's removal proceeding, and on October 23, 2023, Montes filed an updated Application for Asylum and Withholding of Removal. [Dkt. No. 4-2] at ¶¶ 13–14. On February 27, 2024, an Immigration Judge granted Montes's application for deferral of removal to El Salvador under the Convention Against Torture, finding that "it is more likely than not that [Montes] would be detained . . . and subjected to harm rising to the level of torture by Salvadorian public officials" if removed to El Salvador. [Dkt. No. 1-3] at 3. Montes's claim under the Convention Against Torture was based on his fear of torture by the government of El Salvador due to his membership in MS-13. Id. In March 2022, "the government of El Salvador instituted a state of exception" which "suspend[ed] numerous constitutional rights and authorize[d] security forces to conduct warrantless raids and mass arrests of current, former, and suspected gang members." Id. Based on this "state of exception," the Immigration Judge found that, if removed to El Salvador, Montes would be subjected to "a variety of 'abuses' at the hands of public officials, including extrajudicial killing, forced disappearances, deliberate restriction of food and sunlight, and physical attacks by security forces." Id. The Board of Immigration Appeals affirmed the Immigration Judge's decision that, upon Montes's arrival in El Salvador, he would "immediately encounter police and be subject to arrest and detention under the state of exception." Id. at 4. Accordingly, on July 8, 2024, the Immigration Judge ordered Montes removed but granted deferral of removal to El

---

was arrested on July 6, 2018 and detained during the pendency of his criminal proceedings. [Dkt. No. 10-1] at ¶ 9; see 18 U.S.C. § 3585(b). Second, based on the length of Montes's sentence, he became eligible for approximately 11 months of good time credits. [Dkt. No. 10] at 2 (citing 28 C.F.R. § 523.20(b)).

Salvador. [Dkt. No. 1-4].

On October 30, 2024, Montes was released from immigration custody under an Order of Supervision, which set out various conditions of release, including requirements that Montes appear for medical and psychiatric examinations; that he not travel outside of Maryland for more than 48 hours; that he assist ICE in obtaining necessary travel documents; and that he not commit any crimes or associate with any gang members. [Dkt. No. 1-5]. The Order of Supervision also notified Montes that he would "be subject to electronic monitoring" and that any violation of any condition contained in the Order of Supervision could result in him being taken into immigration custody. Id.

There is no indication in the record before the Court that Montes violated any condition of the Order of Supervision; however, on March 23, 2026, Montes was taken into immigration custody after he reported to the Washington Field Office for a scheduled appointment. [Dkt. No. 4-2] at ¶ 20. That same day, Field Office Director Robert Guadian completed and signed a Notice of Revocation of Release, which stated that Montes's "release has been revoked pursuant to 8 C.F.R. § 241.4(l)" to enable ICE "to enforce the removal order entered against" him. [Dkt. No. 4-3]. Montes was also provided with a Notice of Removal informing him of ICE's intention to remove him to Mexico. [Dkt. No. 4-2] at ¶ 21. Because Montes claimed a fear of being removed to Mexico, he was referred to U.S. Citizenship and Immigration Services for a fear screening; however, on April 1, 2026, an asylum officer determined that Montes "did not establish that it is more likely than not that [he] will be persecuted or tortured in Mexico." [Dkt. No. 4-4].

On April 6, 2026, Montes filed the pending Petition, [Dkt. No. 1], and the next day, the Court entered an Order enjoining the federal respondents from removing or transferring Montes

4

from this district without leave of court. [Dkt. No. 2]. On May 1, 2026, two hours before the Court was scheduled to hear oral argument on the Petition, the federal respondents filed a pleading indicating that on April 30, 2026, Montes was served with a second Notice of Revocation of Release, which was signed by Detention and Deportation Officer Reynold K. Balgobin and stated that Montes's "release has been revoked pursuant to 8 C.F.R. § 241.13(i)" because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." [Dkt. No. 8-1]. Specifically, the Notice indicated that Montes's "case is under review for removal to an alternate country." Id. During oral argument on May 1, 2026, the parties discussed Montes's release from immigration detention in 2024; the March 23, 2026 and April 30, 2026 Notices of Revocation of Release; and whether Mexico is likely to accept Montes. The Court also requested that the parties submit additional information regarding the chronology of Montes's immigration detention and Mexico's acceptance practices for third-country removals, which the parties have done. [Dkt. Nos. 10 & 11].

## II.

Montes's Petition raises two issues. First, he argues that he is entitled to release because the manner in which the federal respondents revoked the Order of Supervision violated DHS's regulations and the Due Process Clause. Second, he contends that DHS cannot remove him to Mexico unless an Immigration Judge first reviews the asylum officer's negative determination regarding whether Montes has a reasonable fear of persecution or torture if removed to Mexico. Each of these arguments will be addressed in turn.

## A.

To assess the legality of Montes's detention, the Court must determine whether DHS followed its own regulations in revoking the Order of Supervision. The federal respondents first

5

purported to revoke the Order of Supervision by a Notice of Revocation of Release dated March 23, 2026, which cited 8 C.F.R. § 241.4(*l*); however, that Notice of Revocation of Release did not properly revoke release because there is no evidence showing that the ICE official who signed the document was authorized to make the revocation decision. Section 241.4(*l*)(2) specifies which ICE officials may revoke an order of supervision and when that revocation may occur.[3] The "Executive Associate Commissioner" has "the authority, in the exercise of discretion, to revoke and return to [Immigration and Naturalization] Service custody an alien previously approved for release," and a "district director may also revoke release when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(*l*)(2).

The March 23, 2026 Notice of Revocation of Release was signed by Field Office Director Robert Guadian. [Dkt. No. 4-3]; [Dkt. No. 4-2] at ¶ 21. As an initial matter, "[i]t is not clear from the regulation, which refers to previous Immigration and Naturalization Service position titles, whether an ICE field office director has authority" to revoke release.[4] Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017). Although 8 C.F.R. § 241.4(*l*)(2) authorizes "district director[s]" to revoke orders of supervision, "ICE's regulations are somewhat contradictory as to whether Field Office Directors and District Directors have the same responsibilities and authority." Ndoye v. Joyce, No. 1:26-cv-1219, 2026 WL 765635, at *3 (S.D.N.Y. Mar. 17, 2026). On the one hand, 8 C.F.R. § 1.2 defines the term "district director" as

---

[3] 8 C.F.R. § 241.4(*l*)(1) is inapplicable because there is no evidence in the record indicating that Montes has violated any condition of the Order of Supervision.

[4] The Homeland Security Act of 2002 transferred authority to commence removal proceedings from the Immigration and Naturalization Service to the Department of Homeland Security. Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025).

any "asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge" "to the extent that authority has been delegated to such official." This definition supports the conclusion that 8 C.F.R. § 241.4(*l*)(2) authorizes field office directors to revoke orders of supervision. On the other hand, 8 C.F.R. § 287.5(e) "supports a conclusion that District Directors and Field Office Directors are separate entities." Ndoye, 2026 WL 765635, at *4. Section 287.5(e)(2), which identifies the immigration officials authorized to issue arrest warrants for immigration violations, lists "[d]istrict directors" separate and apart from "Field Office Directors," suggesting that the two positions are distinct. 8 C.F.R. § 287.5(e)(2)(i), 287.5(e)(2)(xxxix). Despite this confusion, some courts have stated at least in dicta that field office directors may revoke orders of supervision. See Santamaria Orellana v. Baker, No. 1:25-cv-1788, 2025 WL 2841886, at *3 (D. Md. Oct. 7, 2025); Gazazyan v. Bondi, No. 5:25-cv-2599, 2025 WL 3898484, at *5 (C.D. Cal. Nov. 7, 2025).

Assuming arguendo that a field office director qualifies as a "district director" and thus has the authority to revoke release, the field office director must make the threshold determinations required by 8 C.F.R. § 241.4(*l*)(2) before revoking an order of supervision. Specifically, the field office director must determine that (1) "revocation is in the public interest" and (2) the "circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."[5] 8 C.F.R. § 241.4(*l*)(2). Here, there is absolutely no evidence in the record indicating that Field Office Director Robert Guadian made a finding that revocation served the public interest or that the circumstances did not permit referral to a more senior ICE

---

[5] The term "Executive Associate Commissioner" likely refers to an ICE Executive Associate Director. Santamaria Orellana, 2025 WL 2841886, at *4.

officer. Absent evidence of such finding, the Notice of Revocation of Release cannot serve as the basis upon which DHS may detain Montes.

The federal respondents also purported to revoke the Order of Supervision by a Notice of Revocation of Release dated April 30, 2026, which cited 8 C.F.R. § 241.13(i); however, that Notice of Revocation of Release also did not properly revoke release. Under § 241.13(i)(2),[6] ICE "may revoke an alien's release . . . and return the alien to custody if, on account of changed circumstances, the [Immigration and Naturalization] Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." As an initial matter, the second Notice of Revocation of Release is remarkably deficient given that it was served on Montes 38 days after he was detained. This detain-first-explain-later approach to immigration enforcement flies in the face of the well-established principle that a post-hoc rationalization "cannot serve as a sufficient predicate for agency action." Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 539 (1981).

Moreover, the federal respondents have failed to demonstrate that there is a significant likelihood that Montes will be removed to Mexico in the reasonably foreseeable future. In support of their position, the federal respondents point to a statistic: From January 21, 2025 to March 2, 2026, 7,257 non-Mexicans were accepted by Mexico for third country removal, 305 of whom were from El Salvador and 340 of whom were suspected gang members. [Dkt. No. 10-1] at ¶ 23. This statistic is insufficient because it says nothing about suspected gang members from El Salvador or individuals with criminal convictions. The federal respondents have also provided a declaration by an ICE officer stating that "ICE is ready to move forward with

---

[6] 8 C.F.R. § 241.13(i)(1) is inapplicable because there is no evidence in the record indicating that Montes has violated any condition of the Order of Supervision.

8

removal, and if the Court were to lift its Order forbidding removal, [ICE] would send [Montes] to a staging facility to effectuate [his] removal to Mexico." [Dkt. No. 10-1] at ¶ 22. But as Judge Nachmanoff cogently explained in Garcia-Rivera v. Noem, that statement is "plainly inadequate to establish a changed circumstance, let alone one that suggests removal has become significantly likely in the reasonably foreseeable future," particularly where the federal respondents have not even suggested that ICE has attempted to secure travel documents from Mexico or that Mexico has agreed to accept Montes. No. 1:26-cv-229, 2026 WL 1244545, at *3 (E.D. Va. Mar. 2, 2026).

ICE officials do not have discretion to decide whether to comply with DHS's regulations. Kale v. Alfonso-Royals, 139 F.4th 329, 336 n.3 (4th Cir. 2025) ("[A]n agency lacks discretion to disobey regulations."); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 266, 268 (1954) (requiring the government to follow their own "existing valid regulations"). Because ICE has blatantly "disregarded the explicit text of its own regulation and violated Petitioner's due process rights," Ndoye, 2026 WL 765635, at *4, the federal respondents will be ordered to release Montes from custody immediately.

B.

As to Montes's second argument, the Court finds that DHS cannot remove Montes to Mexico unless an Immigration Judge first reviews the asylum officer's negative determination regarding whether Montes has a reasonable fear of persecution or torture if removed to Mexico. Under the Immigration and Nationality Act ("INA"), a noncitizen who has been granted withholding of removal may not be removed to a third country if his life or freedom would be threatened in that country. 8 U.S.C. § 1231(b)(3). Although "neither the INA nor current federal regulations provide for any process for removal of a noncitizen to a third country after a grant of

9

withholding of removal," Sagastizado v. Noem, 802 F. Supp. 3d 992, 1009 (S.D. Tex. 2025), "in almost all other circumstances where an alien raises a potential credible fear of removal to a particular country," an asylum officer conducts a fear screening, and the noncitizen is afforded the opportunity to request that an Immigration Judge review the asylum officer's decision, Ramirez Giron v. Simon, et al., 1:26-cv-388, Dkt. No. 15, at 12 (E.D. Va. Apr. 15, 2016) (Alston, J.); see, e.g., 8 C.F.R. §§ 208.30(g)(1), 208.31(g).

Here, although Montes has received a fear screening by an asylum officer, he has not been afforded an opportunity to contest the asylum officer's negative determination before an Immigration Judge. As numerous courts in this circuit have held, such a cursory review of a noncitizen's claim that he fears being removed to a third country violates fundamental principles of procedural due process. See Rivas Rojas v. Noem, et al., 1:25-cv-1624, Dkt. No. 18 (E.D. Va. Nov. 17, 2025) (Giles, J.); Juarez Villatoro v. Noem, et al., 1:25-cv-2359, Dkt. No. 18 (E.D. Va. Jan. 6, 2026) (Trenga, J.); Ramirez Giron v. Simon, et al., 1:26-cv-388, Dkt. No. 15 (E.D. Va. Apr. 15, 2016) (Alston, J.); Cruz Medina v. Noem, 806 F. Supp. 3d 536 (D. Md. 2025); Mendoza Palacios v. Mullin, No. 1:26-cv-648, 2026 WL 933319 (D. Md. Apr. 7, 2026). For these reasons, Montes may not be removed to Mexico unless—consistent with 8 C.F.R. §§ 208.31(g) and 1208.31(g)—an Immigration Judge first reviews and affirms the asylum officer's decision that Montes does not have a reasonable fear of being removed to Mexico. See Bautista Serpas v. Noem, et al., 1:25-cv-2369, Dkt. No. 15, at 2 (E.D. Va. Feb. 3, 2026) (Trenga, J.) (requiring the federal respondents to comply with 8 C.F.R. § 208.31(g)).

### III.

For all the reasons stated above, Montes's Petition, [Dkt. No. 1], is GRANTED as to Counts III, IV, and V, and it is hereby

10

ORDERED that the federal respondents release Montes from custody with all his personal property subject to the conditions of his preexisting Order of Supervision no later than 4:00 PM on Thursday, May 21, 2026. The federal respondents may not impose any new or additional conditions on Montes's release, other than those previously imposed upon him in the Order of Supervision, without leave of court; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Montes unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of his Order of Supervision; or (3) his Order of Supervision has been lawfully revoked in a manner consistent with DHS's regulations and the Due Process Clause; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from removing Montes to Mexico unless (1) he has first received review by an Immigration Judge, pursuant to 8 C.F.R. §§ 208.31(g) and 1208.31(g), of the asylum officer's negative determination regarding whether Montes has a reasonable fear of persecution or torture if removed to Mexico and (2) all other requirements of 8 C.F.R. §§ 208.31(g) and 1208.31(g) have been satisfied.

The Clerk is directed to enter judgment in Montes's favor pursuant to Federal Rule of Civil Procedure 58, forward a copy of this Order to counsel of record, and close this civil action.

Entered this 20 day of May, 2026.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

11